THE PEOPLE *vs.* WILLIAM A. HOPSON and URIAH HOPSON.

On the trial of an indictment containing a single count.for one offence of assault and battery and resisting an officer in the execution of process, the prosecution, after proving an assault and one act of resistance, cannot give evidence of a similar offence committed at another time.

Where there is a question of intent, or of guilty knowledge, proof of other acts of a similar nature with those constituting the principal charge, with a view to establish such intent or knowledge, are sometimes admissible. *Per* BRONSON, C. J.

An execution from a justice's court may be renewed by the justice while it remains unsatisfied, even though sufficient property to satisfy it has been levied on and is held under the levy, when there is not time enough remaining to advertise and sell.

A levy upon personal property suspends the other remedies of the creditor while it continues; but where nothing more is done, it never amounts to a satisfaction of the judgment. *Per* BRONSON, C. J.

If a levy is overreached by a prior lien, or is abandoned for the benefit of the debtor, or defeated by his misconduct, it is not a satisfaction. *Per* BRONSON, C. J.

But if the debtor's title to the property levied on be divested, or the property is lost or destroyed after the officer has taken it out of his possession, the judgment is satisfied to the extent of the value of the property.

If an officer who has levied on a horse under execution by negligence lame the animal, so that he is worth less than before, by the amount due on the execution, it is a

The People *v.* Hopson.

satisfaction of the judgment, and he cannot afterwards proceed on the execution, or procure it to be renewed.

On the trial of an indictment for resisting a constable while engaged in executing process against the defendant's property, the defendant is not entitled to shew that the officer had not taken the oath of office or given the security required by law; it being sufficient in such a case that the party resisted was an officer *de facto.*

*It seems* the rule would be otherwise in a private action brought by the officer for the assault. *Per* Bronson, C. J.

It clearly would be where he sues for fees or sets up a title to property by virtue of his office. This can only be done by one who is an officer *de jure* as well as *de facto. Per* Bronson, C. J.

Where a levy under execution is made upon personal property, which is left in the defendant's possession, the officer may sell on the defendant's premises, and third persons may rightfully attend there as bidders. *Per* Bronson, C. J.

The defendants were indicted for assaulting and beating Peter Lascells, a constable of the town of Salisbury, Herkimer county, and resisting him in the execution of his duty as such constable. The indictment contained two counts, one charging an offence on the 14th, and the other on the 25th of November, 1843. The defendants demurred to the first count, and the district attorney proceeded to trial on the remaining count. On the trial in the Herkimer general sessions it appeared that an execution in favor of Edward Avery against the defendant William A. Hopson for $38,87, dated August 7, 1843, and returnable in ninety days, was issued by a justice of the peace and delivered to Lascells, who swore that he was a constable of the town of Salisbury, to be served. On the 23d of August, Lascells levied on a horse and a sorrel mare, the property of the debtor. On the debtor's application the constable afterwards received and endorsed $19 on the execution, and released the horse from the levy. The levy on the mare was endorsed on the execution as of the 23d of August; and the constable said that the mare was ample security for the amount remaining due on the execution. On the 30th of October the constable learned that Hopson had sold the mare; but he found her, took her into his possession, and advertised the property to be sold on the 6th of November. Finding that the execution would expire on the 5th, the constable saw the plaintiff, who told him to get the execution renewed; and on the 7th of November the justice renewed the execution

for $21,23, the sum then remaining due.   On the same day the constable made a new levy on the sorrel mare, and on various articles of property on the debtor's farm, and advertised the same for sale on the 14th of November.   On that day he sold the mare for $1,87 ; and again advertised the remaining property for sale on the 25th of the month.   Both sales were appointed to be held on the debtor's farm.   While the constable was in the debtor's wagon-house for the purpose of selling on the 14th of November, the debtor ordered him out, and on his declining to leave, the debtor pushed him towards the door.   The defendant Uriah Hopson, the brother of William was present at the time, and both used threatening language.

After proving what was done on the 14th of November, the district attorney offered to prove another assault and battery on the constable committed on the 25th of that month.   The defendants objected, because only one assault was alleged in the count on which the trial was had ; and after proving one assault the district attorney could not prove a second on another day. The court overruled the objection, and the defendants excepted.

On the 25th of November the constable went to the debtor's house with a dozen men or more, for the purpose of selling the property.   While the constable and those who went with him were in the highway near the house, the defendants were in the yard, and the debtor told the constable not to come on his premises.   The constable got over the fence into the yard, when the defendants assaulted and pushed him : the constable called for assistance, and the men in the highway went to his aid.   Before they got over the fence the debtor forbid their coming on his premises.   The constable proceeded, and sold property to satisfy the execution.

The defendants objected that the renewal of the execution was void.   The court overruled the objection, and the defendants excepted.

The defendants offered to prove that Lascells had never taken the oath of office, nor given the security required by law ; and so was not a constable.   Evidence overruled, and exception.

The defendants offered to prove that the sorrel mare, on the

The People v. Hopson.

30th October, when the constable took her into his possession, was of sufficient value to satisfy the balance remaining due on the execution, and that the constable by his carelessness had lamed the mare, and rendered her of little value. Overruled, and exception.

The court charged the jury that the renewal of the execution was valid; and that the constable had a right to sell the property on the debtor's premises, and to call third persons on to the premises to attend the sale; and that the debtor had no right to use violence to prevent their coming on to the land. Exception. Verdict guilty. The proceedings having been removed into this court by *certiorari*, the defendants move for a new trial on a bill of exceptions.

*L. Ford*, for the defendants.

*H. Nolton*, (district attorney,) for the people.

*By the Court*, BRONSON, Ch. J. For the purpose of showing guilty knowledge, or making out the intent with which an act was done, other acts of the same nature, and done about the same time, may sometimes be given in evidence; and this whether the proceeding be civil or criminal in its form. (*Cary v. Hotailing*, 1 *Hill*, 311, *and the books there cited.*) But as a general rule, whether the proceeding be civil or criminal, evidence can only be given of the particular matters laid to the party's charge. Here, there was no question of intent; nor was it a case for making out guilty knowledge by circumstantial evidence. The defendants knew that Lascells was an officer. Proof of that fact, and of the assault and resistance, made out a complete case; and it was clearly wrong to admit proof of another distinct offence, for which the defendants were not then on trial.

We might stop here; but the counsel on both sides wish to have the other questions settled for their guidance on another trial.

Until an execution has been satisfied, it may be renewed by the justice. (2 *R. S.* 251, § 145.) It is said that the levy upon sufficient personal property to pay the debt was a satisfaction of

the judgment; and consequently that the renewal was void. We have repeatedly held that such a levy does not always satisfy the judgment. (*Green* v. *Burke*, 23 *Wend.* 490; *Ostrander* v. *Walter*, 2 *Hill*, 329.) And if the broad ground has not yet been taken, it is time it should be asserted, that a mere levy upon sufficient personal property, without any thing more, never amounts to a satisfaction of the judgment. So long as the property remains in legal custody, the other remedies of the creditor will be suspended. He cannot have a new execution against the person or property of the debtor, nor maintain an action on the judgment, nor use it for the purpose of becoming a redeeming creditor. But without something more than a mere levy, the judgment is not extinguished. There is no foundation in reason for a different rule. The mere levy neither gives any thing to the creditor, nor takes any thing from the debtor. It does not divest a title: it only creates a lien on the property. It often happens that the levy is overreached by some other lien, is abandoned for the benefit of the debtor, or defeated by his misconduct. In such cases there is no color for saying that the judgment is gone; and yet they are included in the notion that a levy satisfies the debt. And where, as in this case, the officer omits to sell within the life of the execution, I see no reason why the debt should be deemed paid, nor why the creditor should not have a renewal of the process. The true rule I take to be this: the judgment is satisfied when the execution has been so used as to change the title, or in some other way deprive the debtor of his property. This includes the case of a levy and sale; and also the case of a loss or destruction of the goods after they have been taken out of the debtor's possession by virtue of the process. When the property is lost to the debtor in consequence of the legal measures which the creditor has pursued, the debt is gone, although the creditor may not have been paid. He must take his remedy against the officer, if he has been in fault; and if there be no such remedy, the creditor must bear the loss. But until the debt is paid, or the debtor has lost his property in consequence of the levy, the judgment remains in force.

The People v. Hopson.

This leads me to notice the defendants' offer to show that the mare was lamed, and rendered of little value, by the carelessness of the constable while the property was in his possession by virtue of the execution. If the offer means that the deterioration in value was equal to the whole amount remaining unpaid on the execution, I think the evidence should have been received. It would make out a legal satisfaction of the judgment, of which the officer had notice; and he was consequently a wrongdoer, when he afterwards went upon the debtor's land. If the injury to the property preceded the renewal of the execution, the renewal was void, because the execution had been satisfied: and if the injury was after the renewal and before the sale, there was then no authority to sell, and the officer might be legally resisted. Although a levy alone will not extinguish the debt, yet a levy followed by such acts as destroy the debtor's beneficial interest in the property, without any fault on his part, must have the effect of putting an end to the judgment.

The next question is on the offer to show that Lascells had not taken the oath of office, or given security, and so was not a legal officer. The evidence would be proper if Lascells, instead of the people, was the party complaining of an injury. If he were suing to recover damages for the assault, it would probably be a good answer to the action that he was not a legal officer, but a wrongdoer, who might be resisted. And clearly, he cannot recover fees, or set up any right of property on the ground that he is an officer de facto, unless he be also an officer de jure. (*Riddle* v. *The County of Bedford*, 7 *Serg. & Rawle*, 386; *Keyser* v. *McKissan*, 2 *Rawle*, 139; *Fowler* v. *Beebe*, 9 *Mass. R.* 231; *Green* v. *Burke*, 23 *Wendell*, 490; *The People* v. *White*, 24 *id.* 526.) When one man attempts to exercise dominion over the person or property of another, it becomes him to see that he has an unquestionable title.

But it is equally well settled, that the acts of an officer de facto, though his title may be bad, are valid so far as they concern the public, or the rights of third persons who have an interest in the things done. Society could hardly exist without such a rule. I will only refer to two or three cases where many

of the others have been collected. (*The People* v. *Stevens,* 5 *Hill,* 630 ; *Green* v. *Burke,* 23 *Wend.* 490 ; *Taylor* v. *Skrine,* 2 *Const. Rep. S. C.* 696.) Now here, although Lascells is a witness, he is not a party; nor is this a proceeding for his benefit. The people are prosecuting for a breach of the public peace ; and it is enough that Lascells was an officer *de facto,* having color of lawful authority. The rights of the creditor, the due administration of justice, and the good order of society all concur in requiring that he should be respected as an officer until his title has been set aside by due process of law. The evidence offered was properly rejected.

Where a levy is made upon personal property without removing it from the possession of the debtor, I see no reason why the officer may not advertise it to be sold, and sell it on the premises of the debtor—taking care to do no unnecessary damage. And if that may be done, then third persons may rightfully attend the sale as bidders.

But on other grounds the verdict must be set aside.

New trial granted.