### Chapman *vs.* Fuller and Wark.

An execution, issued by a justice of the peace, may be renewed, on the last day it has to run, so as to retain the lien thereof upon property levied on by the constable, sufficient to satisfy the execution, and which he has on hand, for want of bidders.

A misdirection to the jury, in the charge of a justice of the peace, on a point of law material in the case, is error; and if it may have misled the jury, the common pleas should reverse the judgment.

Error to the late common pleas of Clinton county. Chapman sued Fuller and Wark before a justice in trespass *de bonis asportatis,* for a stove. The defendants pleaded the general issue, and gave notice that they would justify under a judgment and execution in favor of one Conant against Chapman, which was rendered for the purchase money of the stove. The judgment was recovered in a justice's court on the 27th day of

June, 1845, for over $40, and the execution was issued thereon to Wark, a constable, on the 2d day of Oct. 1845. On the execution was indorsed, "Levied within on a threshing machine and fanning mill, and old cooking stove. The stove levied upon 19th Nov. 1845; 1 two year old heifer, 1 year old December 22d, 1845. The above advertised for sale at one o'clock in the afternoon of the 31st of December. The property on hand for want of bidders.

(Signed)                    N. WARK, Const."

Also as follows: "I hereby renew this ex'n at the request of the plff., to run 90 days, Dec. 31, 1845.

S. HUBBELL, Justice Peace."

Also as follows: "The two year old heifer claimed by Sewell for old Mrs. Chapman, and released from this execution. The stove sold 4th March 1846, to Wm. Bosworth, for $14. The heifer sold to Francis Blane for 4 dollars, March 4, 1846.

(Signed)                    N. WARK, Constable."

Also "Rec'd from Wark on this ex'n 18 dollars."

There was proof tending to show that the defendants took down the stove in the plaintiff's house, where it was in use, and carried it away on the 4th of March 1846, and also that the constable did not offer it for sale during the first life of the execution; though some persons attended at the time the sale was advertised, to bid thereon. Also that the plaintiff bought the stove of Conant, the plaintiff in the execution, in November 1842, and that the judgment was for the purchase money. The cause was tried by a jury, who gave a verdict of $25 for the plaintiff. Among other objections taken by the defendants was one to a portion of the charge of the justice to the jury, set forth in his return, as follows: "4th objection—I charged the jury that there was no law authorizing the renewal of an execution before it was out; that there was no levy indorsed on the execution after the renewal, and it was no justification to the officer having the renewal on the execution, if he obtained it by a false return; that the testimony was that there were bidders present at different times, to bid on the property, and that I charged the jury that these and all other matters in the

Chapman *v.* Fuller.

suit were for their consideration ; that they had heard the law and were judges of the law and the fact and would find accordingly." The defendants sued out a writ of certiorari and the court of common pleas reversed the judgment, and Chapman sued out a writ of error to reverse that judgment in this court.

*J. C. Hubbell & L. Stetson,* for the plaintiff in error.

*G. M. Beckwith,* for the defendants in error.

*By the Court,* HAND, J. It is not necessary, in the view I have taken of this cause, to discuss the point whether it was competent for the plaintiff in this action to show that the return of the constable, that the property was on hand for want of bidders, was false. (*The People* v. *Hopson,* 1 *Denio,* 579. *Glover* v. *Whittenhall,* 2 *Id.* 633. *Browning* v. *Hanford,* 7 *Hill,* 120. *Putnam* v. *Man,* 3 *Wend.* 202. *Townsend* v. *Olin,* 5 *Id.* 207. *Evans* v. *Parker,* 20 *Id.* 622. *Weeks* v. *Ellis,* 2 *Barb. S. C. Rep.* 320. *Cowen & Hill's Notes,* 1085, 1087, 8, 9, 1090.) The charge of the justice, that the execution could not be renewed on the last day it had to run was erroneous ; and as it may have misled the jury, the common pleas were right in reversing the judgment. A misdirection in the charge of the justice, on a point of law material in the case, has very properly been held to be error. (*Trustees of Penn Yan* v. *Thorne,* 6 *Hill,* 326.)

It has been held that an execution may be renewed without a return of *nulla bona* indorsed thereon. (*Wickham* v. *Miller,* 12 *John.* 320.) And this without any written return, and after return day, and repeatedly. (*Visger* v. *Ward,* 1 *Wend.* 551.) And in *The People* v. *Hopson,* (1 *Denio,* 574,) it was held that this could be done after a sufficient levy upon property during the first life of the execution. In that case the execution ran out on the 5th of the month, was renewed on the 7th, and a new levy made on the same day, upon the same property. It was also repeated in that case, that a mere levy is not satisfaction of a judgment, contrary to some earlier de-

cisions. (4 *Cowen*, 417. 7 *Id*. 13, 310, 315.) It has been said that a renewal is improper after sufficient levy. (*Cowen's Tr*. 1074.) But that objection is overruled by *The People* v. *Hopson*, (*supra*.) I find no decision directly upon the question whether there can be a renewal before the time which the execution has to run is fully elapsed. In the case before us, the renewal was on the 90th day, and the last the execution had to run. In *Cornell* v. *Cook*, (7 *Cowen*, 310,) and *Brown* v. *Cook*, (9 *John*. 361,) it was decided that the lien was lost by suffering the execution to expire without sale. If this be still the rule, it follows that unless the execution can be renewed before it wholly runs out, or simultaneously therewith, the lien is gone, although the property remains unsold for want of bidders, or because it was found too late to advertise and sell, or for any other cause, however vigilant the officer. This might give a junior levy or subsequent purchaser the preference, and should not be allowed, unless by some positive rule of law. The statute declares that "if any execution be not satisfied, it may from time to time be renewed by the justice issuing the same, by an indorsement thereon to that effect, signed by him, and dated when the same shall be made." And the renewal shall be deemed to renew the execution in full force in all respects for 90 or 30 days, according to the amount. (2 *R. S*. 251, § 145.) It is further provided that "a constable shall not levy upon, or sell, any property, or imprison a defendant upon any execution after the time limited therein for its return, unless such execution shall have been renewed." (2 *R. S*. 253, § 161.) These sections are perhaps more explicit than the acts of 1824, 1818, and 1813. (1 *R. L*. 393. *Act of* 1824, § 14, 18,) It was held in 1823, that after a return that the property was on hand for want of bidders, as between the officer and the party, the officer must proceed and sell, the first opportunity. (*Pixley* v. *Butts*, 2 *Cowen*, 421.) This was put on the ground of necessity, because after a levy on sufficient property, the execution could not be renewed. We have seen that this is a mistake. (*The People* v. *Hopson*, *supra*.) And the plain language of the statute prohibits the execution of the process after the return

day, unless renewed. (§ 161.) An alias or *testatum fieri facias*, regularly, should be tested on the day the *fi. fa.* was returnable. (*Tidd's Pr.* 931.) When sufficient property is on hand for want of buyers, the renewal is in the nature of the writ of *venditioni exponas*, which does not issue to give authority to the sheriff to sell, but to compel him to do so. (7 *Bac. Abr.* 458. *Clark* v. *Withers*, 6 *Mod.* 298.) It is considered a branch of the fi. fa. and not a distinct process. (*Hugh* v. *Rees*, 4 *M. & W.* 468.) No doubt if the property seized turns out to be insufficient, the renewal would authorize a further levy for the deficiency. The question is not on the power to renew where sufficient property has been levied upon and the delay has been with the consent of the plaintiff and without that of the defendant. That question does not arise here ; for there is no proof that the plaintiff interfered to delay the execution of the process during the first life. The question here is, whether an execution may be renewed on the last day, so as to retain the lien. I have no doubt it may, and perhaps this is the only mode of saving the rights of the plaintiff. Both sections of the statute above referred to, seem to favor this construction, and to me it appears both legal and just.

The judgment of the court of common pleas must be affirmed.

Judgment affirmed.

