THE PEOPLE OF THE STATE OF NEW YORK ex rel. JOSEPH STEINERT AND JOSEPH STEINERT, Appellants, v. PATRICK ANTHONY, Respondent.

*Officer de facto — right of appointee of — how established.*

While it is perfectly well settled that the acts of an officer *de facto* are valid as to third persons, it is equally well settled that where one claims by action an office or its incidents, he can only recover upon proof of title.

Where one seeks to establish, by *quo warranto*, his title to the office of clerk of one of the District Courts of the city of New York by virtue of an appointment from the justice thereof, he must prove that the person by whom the appointment was made was lawfully entitled to the office of said justice. The fact that it was made by one who claimed to be, and was then acting as such justice, but who has subsequently been ousted therefrom, is not sufficient.

In such an action the judgment in the action in which the person by whom the relator was appointed was ousted is admissible in evidence. It cannot be regarded as *res inter alios acta.*

Motion for a new trial on exceptions ordered to be heard in the first instance at the General Term, after a verdict in favor of the defendant directed by the court.

*Albert Cardozo*, for the appellants.

*Nelson J. Waterbury*, for the respondent. A judgment in an action to determine the title to an office is evidence against others than the parties to the action. The rule is different in ordinary

actions and proceedings which bind only the parties who are impleaded. But an action to determine the title to an office is of an entirely different character. It is brought by the sovereign power, under an express provision of the statute, for the specific purpose of determining who is rightfully entitled to a particular office. It is public in its nature and in its result. (*R. and G. V. R. R.* v. *Clark Nat. Bank*, 60 Barb., 234, 249.) In no case can a mere *de facto* officer claim any benefit for himself by reason of his incumbency of the office. (*Riddle* v. *Co. of Bedford*, 7 Serg. & R., 392; *People* v. *Nostrand*, 46 N. Y., 375, 382; *People* v. *Tieman*, 8 Abb. Pr., 359, 361.) It is even held, in cases where an officer *de facto*, without rightful authority, such as a minor, has rendered valid services for a private party, that he cannot recover the fees therefor. (*People* v. *Hopson*, 1 Denio, 574, 579.) A person claiming office by appointment from a usurper, can have no greater right or claim than his principal. (*The Mayor* v. *Flagg*, 6 Abb. Pr., 296, 302; *King* v. *Lisle*, Andrews, 163, 173, 174; *King* v. *Hebden*, id., 388, 389, 392; *Rex* v. *Grimes*, 5 Burr., 2599, 2601; *King* v. *Mayor*, *etc., of York*, 5 Durnf. & E., 66, 68–72.)

Lawrence, J. :

This is an action in the nature of a *quo warranto*, brought to determine whether the relator, Joseph Steinert, or the defendant, Patrick Anthony, is entitled to the office of clerk of the District Court for the seventh judicial district, in the city of New York. The relator was appointed such clerk by Joseph McGuire, who claimed to be, and was at the time of the relator's appointment acting as the justice of the District Court for the seventh judicial district. McGuire had been certified by the city canvassers to have been elected to the office of justice, at the election held on the seventh day of December, 1869. He took the oath of office, and, on the 1st day of January, 1870, entered upon the discharge of its duties, and continued to act as such justice up to and until the 24th day of November, 1873, on which day, in an action brought by the people on the relation of John A. Stemmler and the said Stemmler, against him, it was adjudged by this court that the said McGuire "has intruded into and usurped and unlawfully held and exercised, and still does intrude, etc., into the office of justice of

the District Court for the seventh judicial district, and that he be ousted from said office;" and it was further adjudged that the relator, Stemmler, "was duly elected to said office for the term of six years from and including the 1st day of January, 1870;" that he was entitled to the certificate of election from the canvassers, and was rightfully entitled to hold the office from said first day of January, etc. On the 24th of November, 1873, Stemmler took possession of the office of justice for said district; and, on the same day, he appointed the respondent as clerk of the court. The respondent filed the proper bond, and qualified as required by law, and entered into the possession of the office. The Circuit justice, before whom the cause was tried, directed the jury to find a verdict for the defendant, to which ruling the relator's counsel excepted. An exception also was taken to a refusal of the justice to direct the jury to find a verdict for the plaintiff, and there were exceptions to the rulings of the justice in the admission of evidence. The exceptions were directed to be heard in the first instance at the General Term.

First. The counsel of the appellants contends that, at the time when McGuire appointed the relator, he was a justice *de facto*, and that his acts, as respects other persons than himself, were just as valid as if he had been an officer *de jure;* and that, as the justice of the District Court in question had the right to appoint a clerk and an assistant clerk for the term of the justice, to wit, six years, the appointment of the relator was valid; and that, therefore, there was no vacancy in the office of clerk to be filled at the time when Stemmler, who had been declared by a judgment of this court to be the justice *de jure* of said court, appointed the respondent. I cannot accede to this position of the appellants' counsel, and I do not think that it is sustained by the numerous cases which he has cited upon his brief. While it is perfectly well settled that the acts of an officer *de facto* are valid as to third persons, it is equally well settled that where one claims, by action, an office, or its incidents, he can only recover upon proof of title. (*People v. Hopson*, 1 Denio, 579, and cases there cited ; *People v. Tieman*, 8 Abb., 359.) In the case of the *People v. Nostrand* (46 N. Y., 375, 382), CHURCH, Ch. J., says : " When a person sets up a title to property by virtue of an office, and comes

into court to recover it, he must show an unquestionable right. It is not enough that he is an officer · *de facto*, that he merely acts in the office ; but he must be an officer *de jure*, and have a right to act." In the case of *The People ex rel. Morton* v. *Tieman* (8 Abb. Pr., 359), Allen, J., says: "When an individual claims by action the office or the incidents to the office, he can only recover upon proof of title ; possession under color of right may well serve *as a shield for defense*, but cannot, as against the public, be converted *into a weapon of attack*, to secure the fruits of · the usurpation and the incidents of the office." And in the case of *The People* v. *Hopson* (1 Denio, 579), Bronson, J., who most strenuously upheld the rule as to the validity of the acts of officers *de facto* as to third persons, and who delivered many of the opinions cited by the appellants' counsel, says: "If he [the officer] were suing to recover damages for the assault, it would probably be a good answer to the action that he was not a legal officer, but a wrong-doer, who might be resisted. And, clearly, he cannot recover fees, or set up any right of property on the ground that he is an officer *de facto*, unless he be also an officer *de jure*." And he cites the following cases in support of his position: *Riddle* v. *Co. of Bedford* (7 S. & R., 386); *Keyser* v. *McKissan* (2 Rawle, 139); *Fowler* v. *Beebee* (9 Mass., 231); *Green* v. *Burke* (23 Wend., 490); *People* v. *White* (24 id., 526). All these cases go to show that if McGuire had brought an action to recover the salary of the justice for the seventh judicial district, or had brought an action in the nature of a *quo warranto*, to establish his title to such office, he would have been obliged to prove, before he could have recovered, that he had a legal title to the office ; and the fact that he claimed to be or was an officer *de facto*, would not have availed him. Now, as it has been judicially declared that McGuire did not have, at the time he appointed the relator, a legal title to the office, but that Stemmler had the legal title at that time, does the relator stand in any better position than McGuire would have stood in if he were plaintiff in an action for the recovery of the salary of the office? I think not. In the first place, I am of the opinion that the relator is not, within the meaning of the rule which is invoked by the appellants' counsel, a third party or stranger.

In commenting upon the rule, Judge COWEN, in *Green* v. *Burke* (23 Wend., 502) says: "I know the cases have gone a great way; but they have stopped with preventing mischief to such as confide in officers, who are acting without right." This seems to be the reason of the rule, and I do not think that the courts have designed to extend the rule. The act of McGuire in appointing the relator may well be sustained as valid, so far as to protect the relator in any act which he assumed to perform as clerk of the District Court for the seventh judicial district, prior to the judgment of ouster against McGuire ; and it was unquestionably valid so far as suitors in the court were concerned, and in respect to any acts of the relator, acting as clerk of the court, relative to process issued, papers filed, or judgment entered, or other matters in which such suitors had an interest. Carrying the rule to this extent is all that is necessary for the protection of the relator and of those persons who transacted business in the court while McGuire was in the actual physical possession of the office of justice and while the relator was acting as clerk. This construction of the rule as to the acts of *de facto* officers, in the language of Judge COWEN, prevents "mischief to such as confide in officers acting without right." (*Green* v. *Burke*, *supra*.) In all other respects I am of the opinion that the relator is not to be treated *quoad* McGuire as a third party, nor as a stranger. If McGuire had no title to the office of justice, it seems clear that he could not confer a title to another office, the right to appoint to which was conferred on *the justice*, not upon one who simply asserted that he was such justice. The relator could defend himself for acts done as clerk, under the appointment from McGuire, in any action which might be brought against him, but he cannot convert this "shield of defense" into a weapon of attack to secure the fruits of the usurpation of McGuire, "or the incidents of the office," any more than McGuire could do so. If he can, then the anomaly is presented of an usurper, who has himself no title, conferring upon others the title to offices which the law has provided can only be filled by the officer who has a legal title to the office into which such usurper has intruded. The relator and McGuire, in this respect, seem to me to be one. The title of the relator being derived through McGuire, who had himself no title, amounts to nothing when the relator

takes affirmative action to obtain possession of the office. The fountain cannot rise higher than its source, and the defect in the title of McGuire adheres to the title of the relator.

In this connection the remarks of SUTHERLAND, J., in the case of *The Mayor, etc.*, v. *Flagg* (6 Abb. Pr., 302), are in point. In speaking of the acts of an officer *de facto*, he says: " The rule of law which makes him an officer *de facto*, as to such third persons, confers on him no rights, and absolves him from no responsibility for his affirmative claimed official acts or proceedings. As to himself, such acts and proceedings are a mere nullity. Without right himself, he cannot confer any on others. His appointment of deputies or subordinates, as to himself and them, would be as void as any other colorable official act. It might make them severally officers *de facto* as to third persons, but could give them no greater or better right to institute, as such, any affirmative action or proceeding than he himself had as an officer *de facto*. The right and title of his appointee rests on his own right and title, and neither can recover the salaries or the fees and emoluments of the office, without proof that he is an officer *de jure*, and duly qualified and entitled to act." Restricted within the bounds indicated by the cases to which I have adverted, the rule as to the acts of officers *de facto* being valid as to third parties, is just, wise and equitable. If it be extended to the length contended for by the appellants' counsel it becomes an instrument by which a mere usurper can secure to himself, through his appointees, all the fruits of a legal title to an office although he has been ousted from the office itself by the judgment of a court of competent jurisdiction. The law does not countenance such an absurdity, nor do the cases referred to by the appellants' counsel, when properly considered, sustain the appellant's position. Those cases were all decided with reference to the rights of third parties. They were not cases where an appointee of a *de facto* officer, having no legal title, was seeking to establish a legal title himself to an office by reason of such appointment. In the case of *The People* v. *Stevens* (5 Hill, 616), there are some expressions in the opinion of Judge BRONSON which would seem to favor the view taken by the appellants. I think that an examination of the opinion will show, however, that that learned judge did not intend to be understood as advancing the broad doctrine contended for by the appellants, and I am con-

firmed in this view by the language used by the same judge in the later case of *The People* v. *Hopson* (*supra*).   If, however, I am wrong in this construction, then I maintain that the particular portions of Judge Bronson's opinion which might be deemed applicable to this case, were not concurred in either by Judge Cowen or by Chief Justice Nelson, and that the real and only point decided in the case was, that as the relator in that case had another specific legal remedy for obtaining the books and papers appertaining to the office which he claimed, he was not entitled to a mandamus to enforce the delivery of such books and papers.

Second.   The judgment of ouster against McGuire, in the suit brought by Stemmler, seems to me to have been properly admitted in evidence.   The judgment was referred to in the complaint, and it was specifically set up in the defendant's answer as a defense.   If I am correct in the views I have above expressed, the judgment could not have been regarded as *res inter alios acta*.   There was a privity between the relator and McGuire, and McGuire's title failing the relator's title failed also.

The cases cited in an elaborate brief of the defendant's counsel certainly sustain the admissibility of the judgment as evidence in the case, and the counsel for the relator has not referred us to any case holding differently. (See *Rex* v. *Hebden*, Andrews, 388, *et seq.* ; *Rex* v. *Grimes*, 5 Burr., 2599, 2610.)

In the case of *Rex* v. *The Mayor of York* (5 Durnf. & East., 66, *et seq.*), cited by appellants' counsel, Lord Kenyon said: "If you derive title to a corporate office through A and the prosecution show judgment of ouster against A, it is conclusive against you unless you can impeach the judgment as obtained *per fraudem.*" The exception to the admission of the certificate of the appointment of the defendant and of the copy of the oath of office, and bond executed by the defendant, rests upon the same foundation as the exception to the admission of the judgment.   There was nothing in the case, when both parties had rested, to submit to the jury, and on the law, in my opinion, the justice at the Circuit was right in directing a verdict for the defendant.

The exceptions should be overruled, and judgment should be entered for the defendant on the verdict, with costs.

Davis, P. J., and Daniels, J., concurred.

Ordered accordingly.